## Case No. 9,544.

### MILES v. RECEIVERS.

[4 Hughes (1883) 172.]

Circuit Court, E. D. Virginia.

EQUITY PRACTICE—SENDING ISSUES TO JURY—RAILROAD COMPANIES — NEGLIGENCE AND CONTRIBUTORY NEGLIGENCE.

[1. On a motion to send to a jury the issues arising under a petition against railroad receivers to recover damages for an alleged wrongful death, it is competent for the court to determine, on the evidence submitted, whether or not the case is one for damages, and if of opinion that it is not, then to dismiss the petition finally.]

[2. The rule applicable to the case of a boy killed by jumping upon an engine slowly moving through a street, is that if he was himself guilty of any negligence or act which caused the accident there can be no recovery unless defendant could have avoided it by the exercise of ordinary care and diligence.]

[3. A boy of eight years jumped upon the front of a locomotive moving slowly through a street, and the fireman, who saw him, immediately called to him to hold on, then notified the engineer, and ran to the boy's rescue. The engineer immediately reversed, and the boy either voluntarily loosened his hold or was jarred off by the shock and sustained injuries causing his death. *Held,* that even if the engineer commit-

ted a mistake in reversing, yet, having acted on the ordinary rule in such cases. it did not render the company liable, for its duty was to use only ordinary care and diligence.]

[4. A boy of eight years whose mother permits him to play upon the street is presumably of sufficient intelligence to know the danger of attempting to jump upon the front of a moving locomotive, and is therefore capable of contributory negligence barring a recovery for his death.]

The petitioner is the mother, the administratrix and the sole heir of the intestate [William Miles], who was killed by being run over by a locomotive engine of the defendants [the receivers of the Atlantic, Mississippi & Ohio Railroad Company] in the city of Norfolk on the 3rd day of January, 1878. The petitioner sues under the provisions of the Code of Virginia (chapter 145, §§ 5, 8) authorizing the personal representative of a deceased person to sue when that person if alive could have recovered damages for the wrongful act or neglect of the person or corporation sued. The claim is for $10,000 damages. All the evidence is in the form of depositions, and consists exclusively of that of the witnesses summoned by the petitioner. Its substance is as follows: The city of Norfolk allows freight trains and locomotives of the defendants to be run on the railroad track on Wide-Water street at a rate of speed not exceeding five miles an hour. A freight train of eight or ten cars was, on the 3rd January, 1878, running slowly along this street at the rate of 2½ to 3 miles an hour, pushed from the rear by a locomotive engine. There was a lookout on the forward car, and one on the rear car; and an engineer and a fireman on the locomotive. As the engine passed a group of men a lame boy in his eighth year of age. who had been frequently on the street unattended, got upon the fore-part of the engine. The fireman who was looking out on that side (while the engineer was doing so on the other) saw the boy's act, realized the danger he was in, and at once motioned and called to him to hold on. He also gave immediate notice to the engineer of the boy's situation and jumped down immediately and went to the boy's rescue. The engineer, obeying a rule prescribed when danger threatens, stopped and reversed his engine, causing a slacking of the cars, and a jerk such as would be produced with a train running thus slowly. Before the fireman who had jumped down could reach the boy, the latter had let go his hold to drop to the ground; or else the jar of reversing the engine had jostled loose his hold. In falling, the boy was caught by the machinery of the cylinder, dragged down upon the track, and his legs were run over by the engine, receiving injuries causing a nervous shock from which he died in a few hours. The mother of the boy lived on the same street in an upstairs room. She had gone out more than an hour before the accident, and was at an acquaintance's on another street. of the town, sewing, at the time. In going out,

the boy had followed her down stairs to the door of the ground floor, and had promised her there, not to go out upon the street. The evidence does not show, as counsel for petitioner asserts, that the fireman was attempting to put the boy off the engine. On the contrary, it shows that the effort of the fireman was to induce the boy to hold on, until he could rescue him. The evidence does not prove that the reversing of the engine jarred the boy off, as the same counsel assumes. The evidence leaves that matter in doubt. Wood, the fireman, who was the witness nearest the boy, testifies that he could not tell whether the boy dropped off of his own accord, or was jostled off by the jar of the engine in reversing. On the other hand, Brown, who was a little way off, says, the boy "let go his hold;" and expresses the opinion that the cause of the accident was "the jar of the box-car which must have been caused by reversing the engine;" and adds, that but for the boy's being lame "he might have saved himself;" intimating by the last remark, that he thought the accident was not due directly or exclusively to what was happening to the train. This witness testifies that the fireman did all that it was proper for him to do in the emergency; and the fireman and engineer testify that there was nothing which they could have done to save the boy, that they did not try to do. These three men were all witnesses of the petitioner, but employés of the defendants. There is nothing in the evidence to impeach or contradict their testimony. The foregoing is but the gist of the evidence, which may be seen at large in the depositions filed in the cause.

HUGHES, District Judge. If, on a review of the evidence, and on the law arising upon it, it shall appear to the court that this is a case for damages, then it must be sent to a jury for an assessment of the amount to be accorded to the petitioner. It has been argued and submitted on the question whether or not it is a case for damages and for a jury, and this is the first question upon which I am to pass. It is not pretended that any evidence in addition to that now before the court can be had in the case. Indeed the case has been closed as to the taking of evidence. So that, all the evidence being in, and the case submitted upon the question whether or not it is a case for an enquiry as to the amount of damages, it is not only competent for the court to determine whether or not it is a case for damages; but also, if concluding that it is not, to dismiss the petition finally.

The law of negligence applicable to such a case as that at bar may be stated as follows: The plaintiff in an action for negligence cannot succeed if it is found that he has himself been guilty of any negligence or act which caused the accident. unless the defendant could, by the exercise of ordinary care and diligence, have avoided the mischief which

happened. Radley v. London & N. W. Ry. Co., L. R. 9 Exch. 71. The present case turns upon the latter enquiry; for whether it be a grown person or a child who wantonly gets upon a running engine, the managers of the engine and train are bound to use ordinary care and diligence to avoid accident to him. And, if that ordinary care and diligence appears, there can be no recovery; whether the sufferer by the accident be a grown person, or a youth capable of knowing whether or not his act was wrongful and dangerous, or a child too young to conceive the nature of his act. The testimony shows that the engineer acted upon the rule which the experience of railroad men has taught to be the wisest, safest and best one; namely, when danger threatens, to stop the engine and reverse it. The testimony shows that the fireman acted upon the belief (evidently proper) that it was best for that boy to hold on, and for himself to go to his rescue and to lift him clear of entanglement with the machinery. The testimony thus proves that these men used more than ordinary care and diligence in these respects and brings the case within the rule which exonerates defendants from liability to damages.

The testimony indicates that the boy was killed, not from want of ordinary care and diligence in the engineer and fireman, but from a jarring of the engine necessarily incident to the position in which he had placed himself, and from a lameness which disabled him from keeping clear of the machinery when he dropped from the engine. Even if it were true, which I by no means concede, that the engineer committed a mistake in stopping and reversing the engine, yet this would not subject the defendants to liability. He was bound only to use "ordinary care and diligence;" he was not bound to avoid mistakes, committed with bona fide intention to carry out reasonable rules and orders prescribed for such emergencies. If he innocently committed such a mistake, then the case falls within that most excellent rule of law laid down by Dr. Wharton (Whart. Neg. § 314): "The law has so high a regard for human life that it will not impute negligence to an effort to preserve it, unless made under such circumstances as to constitute rashness in the judgment of prudent persons." And another writer says (Bigelow, Torts, p. 312): "The defendant can never be liable when anything out of the natural and usual course of events transpires in such a way as to make the defendant's negligence, otherwise harmless, productive of injury."

Some of the more general principles of law governing a case like that at bar are the following: "When a man does everything in his power to avoid doing the mischief, then the liability ceases, and the event is to be regarded as a casualty." Whart. Neg. § 781. "A person is expected to anticipate and guard against all reasonable consequences of his act, but not to anticipate and guard against

that which no reasonable man would expect to occur. Greenland v. Chaplin, 5 Exch. 248; Add. Torts, 29. "The standard by which to determine whether a person has been guilty of negligence is the conduct of the prudent or careful or diligent man." "The mere fact of an injury having been suffered is not enough to establish a charge of negligence. No one is responsible for an injury caused purely by inevitable accident, while he is engaged in a lawful business, even though the injury was the direct consequence of his own act, and the injured party was at the time lawfully employed, and in all respects free from fault." Shear. & R. Neg. § 5. "There are many cases in which it might be desirable that a greater degree of care should be used than the law requires; but it is only the lack of such care or diligence as the law demands which constitutes culpable negligence. And the law makes no unreasonable demands. * * * * If one uses all the skill and diligence which can be attained by reasonable means, he is not responsible for failure." Id. § 6.

I think these extracts contain the law of the present case. These men did, not only what prudent men usually do in such an emergency as that which happened, but they did what the experience of railroad men, and rules of prudence usually governing the running of railroads required them to do. I have considered the case without any reference to the doctrines of contributory negligence. If a grown and responsible man had got upon that engine while in motion, and suffered the injuries sustained by the boy Miles, there would have been no semblance of blame attaching to the railroad officers. The fireman might have ordered him off peremptorily; and the engineer might have stopped the train as abruptly as he had chosen; all without incurring liability for fault, if they acted in good faith; and there could have been no recovery. But there are cases in which children and persons of unsound mind are considered incapable of responsibility for their acts and are not held to the consequences of them, however reckless or tortious. If the boy in the present case had been too young to know that he was doing wrong and incurring risk of danger in getting on a running engine, then the conduct of the men on the engine could be judged wholly without reference to the boy's act, and if they were guilty of fault, liability for damages would have been incurred. In what has been said, I have treated the case in that point of view. But, is a boy in his eighth year incapable of discerning that such an act as that of young Miles, was wrong and perilous? This boy, it seems, was frequently on the street. His being often upon the street alone, implies that his mother thought him capable of knowing how to keep out of danger; for they lived on the very street on which the freight trains and locomotives of the defendants habitually ran. It is not the case of a child

two or three years old being run over by a train on the track of a railroad in the country, at a point distant from a depot, where trains pass at full speed and afford but short notice of their approach,—as in Ex parte Stell [Case No. 13,358], decided by me. Nor is it the case of a child being injured while on a street traversed by a railroad track in consequence of the train moving faster than is allowed by law, or of a car becoming detached in consequence of some omission or careless act of an employe, as in Norfolk & P. R. Co. v. Ormsby, 27 Grat. 455. Here there was no surprise; no unusual speed; no act of carelessness. There was a look-out at each end of the train. The engine was properly manned and managed. The engine bell was ringing the alarm. The child was not a helpless, thoughtless, listless infant. He was not run over while unconsciously at his play. It was the case of a boy nearly eight years of age, frequently on the street, who himself got on an engine in wantonness, and who dropped off, probably of his own accord in fright; or possibly from inability to stay on a place not arranged to secure a safe footing for any one. I think it is a fair, if not a necessary inference from the acts of this boy and his mother, that he was intelligent enough to know the nature and danger of what he was doing. In all the cases of injuries to children which I have seen in the Reports, they were the passive subjects of injury. Here, however, is the unusual, if not the unprecedented case of the child being the actor on the occasion, and the originating author of the misfortune which befell him. I think this child was capable of intelligent choice between what was wrong and dangerous on one hand; and what was right and safe on the other; and that he intelligently chose the wrong and dangerous course. If this be so, the law is plain. The supreme court of the United States, in Railroad Co. v. Gladman, 15 Wall. [82 U. S.] 408, say: "The rule of law in regard to the negligence of an adult and the rule in regard to an infant, is quite different. By the adult there must be given that care and attention for his own protection that is ordinarily exercised by persons of intelligence and discretion. If he fails to give it, his injury is the result of his own folly, and cannot be visited upon another. Of an infant of tender years less discretion is required; and the degree depends upon his age and knowledge. Of a child three years of age, less caution would be required than of one of seven; and of a child of seven less than of one of twelve or fifteen. The caution required is according to the maturity and capacity of the child; and this is to be determined in each case by the circumstances of that case." The same proposition is repeated by the same court in Railroad Co. v. Stout, 17 Wall. [84 U. S.] 660. In Lynch v. Smith, 104 Mass. 52, the court say, passim: "If the child has not acted as reasonable care adapted to the circumstances of the case would

dictate, and the parent has also negligently suffered him to be there, both these facts concurring contribute to the injury, for which the defendant ought not to be required to make compensation." The child there was 4 years and 7 months old. Plaintiff recovered. In Dowd v. Chicopee, 116 Mass. 93, it was held by the court that the plaintiff (an infant) was bound to prove that he exercised that degree of care and attention which may fairly and reasonably be expected from boys of his age and capacity. Wharton says (sections 310, 322), that from a child diligence and care are only to be exacted in proportion to his age or capacity; and Bigelow says (page 320), that if a child be guilty of contributory negligence (supposing him capable of negligence) there can be no recovery; and that a child must exercise such care as he reasonably can, or as children of the same capacity ordinarily exercise. Irrespectively, however, of the law of contributory negligence as applicable to children competent to know when they are incurring danger, there can be no recovery here.

On the whole evidence and the law arising upon it, as laid down recently in the cases of Richmond & D. R. Co. v. Anderson, 31 Grat. 812, and Railroad Co. v. Jones [95 U. S.] 443, and in my own decision in the case of Ex parte Stell [supra], filed in the papers of that cause, I hold that the defendants in this case are not liable in damages to any amount; that an issue of chancery for a jury must be denied; and that the petition must be dismissed, but without costs against the petitioner,—and I will so order.

A copy.
    Teste.
[Seal.]           M. F. Pleasants, Clerk.